John M. Keane, S.
When the 6 ‘ white hunter ” journeys into the jungle in search of an elephant, he arms himself with a powerful rifle and equally effective bullets. He knows it would be the height of folly to embark on such a hunt armed with a small shotgun and buckshot. Why does the contestant in a probate proceeding, whose task in nullifying a will is equally as formidable as shooting an elephant, so frequently come into court with “ omnibus” or “bushel basket” objections which have the effectiveness of a small shotgun with buckshot rather than with concise objections which might have the strength of a high-powered rifle with big game bullets Í
In this contested probate proceeding tried without a jury, objections were filed alleging that (1) the instrument was improperly executed; (2) the decedent did not possess testamentary capacity; (3) the decedent did not understand the instrument because she was illiterate; (4) the subscribing witnesses did not hear a satisfactory explanation of the contents of the instrument, and (5) the instrument was procured by fraud and undue influence. The contestant offered no testimony. On motion of the proponent, the objection relating to fraud and undue influence was dismissed at the close of the testimony and decision was reserved on motions addressed to the other objections.
When the instrument propounded for probate was executed, Maria Simone was 84 years old. Although she had lived in this country for over 60 years, she was unable to read and write both Italian and English. The testimony of all witnesses indicated that she spoke Italian by choice but had an understandable knowledge of spoken English. On the date of the instrument she was the mother of four adult children, a daughter and three sons. One son, Robert, was seriously ill with terminal cancer and died on January 1, 1966, five days before Maria Simone herself died. The contestant is Carol Lusk, a daughter of Robert Simone.
There was testimony that on or about November 28, 1965 Maria Simone was advised of the terminal nature of her son Robert’s illness. On November 29, 1965 she awakened her nephew, Richard A. Battaglini, early in the morning by telephone and requested him to come and see her at once. Although an attorney licensed to practice in New York, Mr. Battaglini on that date was not practicing law pursuant to an order of suspension.
In response to the request of his aunt, he went to her home and talked with her. She told him about Robert’s terminal illness. She expressed a wish to change her existing will, dated *316 October 12, 1952, which her nephew, Mr. Battaglini, had drawn. In that will her principal asset, the home, had been left to her only daughter, Lucy. Some land contiguous to the home was left to her four children equally.
She wished to remove the name of her son Robert from the will. She understood correctly that, if he predeceased her, his daughter, the contestant herein, would succeed to his interest. She did not want this to occur. Mr. Battaglini testified that she told him her reasons for this feeling. Mr. Battaglini stated that he would rather not testify concerning these reasons unless he was requested to do so. He was not so questioned by the contestant.
Mr. Battaglini told his aunt that he would be unable to practice law until sometime after the first of the year. He asked if the matter could wait that long. His aunt wished to have it done right away because of the seriousness of her son’s illness. Mr. Battaglini said that an attorney in his office would prepare a revised will as soon as possible.
In response to questioning, Mr. Battaglini said that on November 30, 1965 his office advised him that should he wish to take the new will to his aunt, he could find it on a particular desk in the office. In the evening of that day, he and his wife went to his aunt’s home. When they arrived, Anita George, a niece of the decedent, was visiting with her. In addition, the son-in-law of the decedent, Seymour E. Berman, was present.
The real controversy in this proceeding relates to what occurred after Mr. Battaglini arrived at the home of his aunt.
It is undisputed that Mr. Battaglini talked to his aunt. Subsequently she placed her mark in the form of a cross on the instrument. Mrs. Battaglini, Anita George and Seymour E. Berman signed as subscribing witnesses. After this was done, Mr. Battaglini took the instrument and retained it until it was filed in this court.
The three subscribing witnesses were examined pursuant to section 141 of the Surrogate’s Court Act before objections were filed. The court was advised that Mr. Battaglini was examined before trial. Much of the cross-examination by the contestant related to variations in the direct testimony from that given on the preliminary examination. Apparently there were no such variations in the testimony of Mr. Battaglini because references were not made to the examination which he had attended before trial.
None of the three witnesses were attorneys. Mrs. Battaglini did testify that she had previously witnessed wills and was somewhat familiar with the procedure. From the testimony of the *317 subscribing witnesses and Mr. Battagiini, who was present, the court determines that the requirements of section 21 of the Decedent Estate Law relative to the execution of a will were fulfilled.
Since no testimony was offered by the contestant to support her objection about lack of testamentary capacity of the decedent in opposition to the testimony offered by the proponent, the court also finds that Maria Simone was competent to make a will on November 30, 1965.
This leaves one question and the only real basis upon which the contestant can object to this will. Did this elderly lady, who was illiterate in both Italian and English, understand the nature of the document which she signed? More particularly, was the nature of the document adequately explained to her? The court must be satisfied in order to admit the will to probate that the testatrix understood the nature of the document. This presents little difficulty when the person is familiar with the language in which the document is written. When one is under a disability as to the language, other proof must be submitted that the instrument was fully understood.
Mr. Battagiini testified that he explained the dispositions of the will in Italian and English to Maria Simone. He did not translate it word for word because his Italian was not that precise. Of the subscribing witnesses, only Anita George was fully conversant in Italian and she was hard of hearing.
If the instrument before the court were extremely complicated and differed from the prior will in many respects, a more serious problem would exist. However, there is really only one significant change between the will drawn in 1952 and the present instrument before the court. In the present instrument, Robert is specifically excluded. Although counsel for the contestant argued that there are many differences in the two instruments, he did not specify them.
The court has examined the two instruments carefully and finds them substantially identical with two exceptions. In the present instrument (1) Robert is excluded, and (2) Mr. Battagiini is named as executor instead of Joseph Simone, another son of the decedent. From the instructions received by Mr. Battagiini, Maria Simone was interested primarily in excluding her son Robert because, in the event he predeceased her, his share would pass to his daughter, the contestant herein.
Maria Simone had also told her niece, Anita George, about excluding Robert from her will. The instrument offered for probate does specifically exclude Robert. From the testimony given, the court determines that Maria Simone was adequately *318 advised of the contents of the proposed will. Belying on the information given to her, she was satisfied that the instrument submitted for her signature expressed her wishes. Word-for-word translation is not a necessary requisite. If the instrument submitted to the court effects the expressed wish of Maria Simone, it should stand as her will.
The facts in this case are remarkably similar to those in Matter of Albarino (45 Misc 2d 216). The principal difference is that, in the Albarino case, the attorney was one of the subscribing witnesses and was more fluent in Italian than Mr. Battaglini. In the Albarino case, it appeared that the will was translated word for word. Mr. Battaglini testified that this did not occur but that he translated the substance of the will to Maria Simone. The reasoning in the Albarino case is equally valid here.
Therefore, the instrument offered for probate was validly executed and shall be admitted to probate as the last will and testament of the decedent, Maria Simone. The motions for dismissal of the objections, upon which decision was reserved at the close of the testimony, are hereby granted, without costs.